IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **VERNA GREGG,** | * |
| as Personal Representative for the | |
| **ESTATE OF PHILMORE ROY DAVIS** | * |
| 5643 Harbor Valley Drive | |
| Baltimore, Maryland 21215 | * |
| | |
| *Plaintiff* | * |
| | |
| v. | * |
| | |
| **SERGEANT ERIC STRAWDERMAN** | * |
| Baltimore County | |
| Department of Corrections | * |
| 720 Bosley Avenue | |
| Towson, MD 21204 | * |
| | |
| **SERGEANT CHRISTOPHER FISCHER** | * |
| Baltimore County | |
| Department of Corrections | * |
| 720 Bosley Avenue | |
| Towson, MD 21204 | * |
| | |
| **OFFICER DEVIN MCKEIVER** | * |
| Baltimore County | |
| Department of Corrections | * |
| 720 Bosley Avenue | |
| Towson, MD 21204 | * |
| | |
| And | * |
| | |
| **OFFICER MATTHEW SWANKE** | * |
| Baltimore County | |
| Department of Corrections | * |
| 720 Bosley Avenue | |
| Towson, MD 21204 | *    Civil Action No.: 1:23-cv-02270 |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

<u>**THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**
**FOR MONETARY DAMAGES FOR VIOLATION OF**
**PLAINTIFF'S CIVIL RIGHTS**</u>

1

NOW COMES Plaintiff Verna Gregg, as Personal Representative of the Estate of Philmore Roy Davis, by and through undersigned counsel, who hereby sues Defendants, Sergeant Eric Strawderman, Sergeant Christopher Fischer, Officer Devin McKeiver, and Officer Matthew Swanke. Plaintiff fully incorporates the Original Complaint, First Amended Complaint and Second Amended Complaint in this action by reference and states further:

### Introduction, Jurisdiction and Venue

1.      On or about August 23, 2020, Plaintiff Philmore Davis suffered extreme injuries when he was taken to the ground at the Baltimore County Detention Center and subjected to painful and injurious joint manipulations whereby his knee joints were forcibly leveraged against the opposite leg. The described joint manipulations was affected twice on the right knee, and proximately caused an occlusion of the right popliteal artery that compromised the perfusion (circulation) in the lower extremity to such an extent that Decedent Davis required a right through knee amputation, as well as a higher revision amputation.

2.      This is an action for monetary damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth, Eighth and Fourteenth Amendments of the United States Constitution, the common law of the State of Maryland, and the Maryland Declaration of Rights against Baltimore County Detention Sergeant Eric Strawderman, Sergeant Christopher Fischer, Officer Devin McKeiver, and Officer Matthew Swanke, in their individual and official capacities. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this court to entertain claims arising under Maryland State law.

3.      Plaintiff maintains that the defendants named herein forcibly detained Decedent Davis without legal justification and/or a proper cause while he was incarcerated at the Baltimore County Detention Center; directed unwarranted and excessive force at Decedent Davis; acted

2

knowingly to injure Decedent Davis and otherwise violated his substantive due process rights; and acted with malice and/or a reckless disregard for the Decedent Davis's health and wellbeing with an understanding that their actions possess an unreasonable risk of serious physical injury to Decedent Davis.

4.      Venue is proper under 28 U.S.C. § 1391 in that the Plaintiff resides in the State of Maryland, and the causes of action set forth in this Complaint concern events that occurred in Baltimore County, Maryland.

5.      On September 18, 2020, notice of the claims advanced herein was posted in accordance with Maryland's Local Government Tort Claims Acts to the Office of the County Attorney for Baltimore County. This notice letter was received by the County Attorney and later acknowledged through a correspondence authored by Deputy County Attorney Glenn T. Marrow on October 8, 2020.

6.      On September 28, 2020 a Preservation of Evidence Letter was sent to Gail Watts, Director of the Baltimore County Detention Center. The Baltimore County Department of Corrections marked this correspondence as "Received" on October 7, 2020. Notwithstanding the contents of the Preservation of Evidence Letter, CCTV video footage which would have captured the subject occurrence has not been preserved.

**Parties**

7.      Decedent Philmore Davis was born on January 3, 1957 and died on June 24, 2023. The Estate of Philmore Roy Davis (Estate No. 204665) was opened by the Register of Wills for Baltimore City on August 17, 2023, and Verna Gregg, 5643 Harbor Valley Drive,

Baltimore, Maryland 21225, was appointed as the Personal Representative for the same. As Personal Representative, Verna Gregg has authority to bring the instant lawsuit against the named Defendants.

8.  At all times relevant to this Complaint, Defendant Eric Strawderman was employed as Correctional Officer working at the Baltimore County Detention Center, 720 Bosley Avenue, Towson, Maryland 21204. At all times relevant to this Complaint, Defendant E. Strawderman was acting within the scope and course of employment, under Maryland State and local law, as a member of the Baltimore County Department of Corrections

9.  At all times relevant to this Complaint, Defendant Christopher Fischer was employed as a Correctional Officer at the Baltimore County Detention Center, 720 Bosley Avenue, Towson, Maryland 21204. At all times relevant to this Complaint, Defendant C. Fischer was acting within the scope and course of employment, under Maryland State and local law, as a member of the Baltimore County Department of Corrections.

10. At all times relevant to this Complaint, Defendant Devin McKeiver was employed as a Correctional Officer at the Baltimore County Detention Center, 720 Bosley Avenue, Towson, Maryland 21204. At all times relevant to this Complaint, Defendant D. McKeiver was acting within the scope and course of employment, under Maryland State and local laws, as a member of the Baltimore County Department of Corrections.

11. At all times relevant to this Complaint, Defendant Matthew Swanke was employed as a Correctional Officer at the Baltimore County Detention Center, 720 Bosley Avenue, Towson, Maryland 21204. At all times relevant to this Complaint, Defendant M. Swanke was acting within the scope and course of employment, under Maryland State and local laws, as a member of the Baltimore County Department of Corrections.

**<u>Facts</u>**

12. On August 21, 2020, at or about 3:10 pm, Decedent Philmore Davis was served with a Temporary Protective Order by Baltimore County Police Officer S. McCardell (#5489).

13. When Decedent Davis subsequently indicated that he did not wish to leave his residence, he was arrested and transported to Precinct 2, located at 6424 Windsor Mill Road, Baltimore, Maryland 21207.

14. The following day, August 22, 2020, at or about 8:57 p.m., Decedent Davis appeared for a bail hearing conducted by Commissioner Brian Seippe. At the bail hearing, Commissioner Seippe believed that Decedent Davis was exhibiting signs of incompetence; as a result, he issued an order that Decedent Davis be held on a temporary commitment pending a competency evaluation and hearing.

15. On August 23, 2020, at or about 3:00 a.m., Decedent Davis was transported to the Baltimore County Detention Center, 720 Bosley Avenue, Towson, Maryland 21204. Baltimore County Detention is a correctional institution operated by Baltimore County, Maryland through its departments, agents, servants, and/or employees. Sergeant Eric Strawderman, Sergeant Christopher Fischer, Officer Devin McKeiver, and Officer Matthew Swanke were agents, servants, or employees of the Baltimore County, Maryland, Baltimore County Department of Corrections, and/or Baltimore County Detention Center during the subject encounter giving rise to the various claims asserted herein.

16. Decedent Davis was calm and cooperated with Baltimore County Detention Center's agents, servants, and/or employees in the Intake Vestibule for a temperature check.

17.     At approximately 3:24 a.m., Decedent Davis was called to begin the booking process. A digital recording obtained by CCTV cameras located within the Intake Vestibule depicts Decedent Davis walking into the facility.

18.     Decedent Davis was responsive to directions from correctional staff before and during a medical screening that preceded his acceptance into the facility.

19.     Latasha Spencer, LPN interviewed Decedent Davis at 3:30 a.m. on August 23, 2020, and gathered information necessary to complete a Rapid Receiving/Health Assessment Form. Nurse Spencer indicated "No" to the following questions: "Does the patient appear to exhibit any bizarre or unusual behaviors suggestive of a mental health disorder? Does the patient's behavior, history, or physical appearance suggest the risk of suicide, assault, or psychiatric condition?"

20.     During the course of the 3:30a.m. Rapid Receiving/Health Assessment Interview, Nurse Spencer also documented Decedent Davis to have an "Appropriate" appearance and to have been oriented to his person, place and time.

21.     During a Rapid Receiving/Health Assessment interview, Nurse Spencer concluded that the Decedent Davis could appropriately "Proceed to Intake."

22.     Decedent Davis was subsequently admitted into the Baltimore County Detention Center.

23.     Decedent Davis was placed into "Holding Cell 1" due to his temporary status.

24.     Defendant Officer Devin McKeiver reported to Holding Cell 1 to transport Decedent Davis for a medical intake examination.

25.     Thereafter, Defendant McKeiver informed Defendant Sergeant Christopher Fischer that Decedent Davis would not exit the cell. Defendant Fisher traveled to Holding Cell 1 in response to the report.

26.     Defendants McKeiver and Fischer observed Decedent Davis sitting on the floor with his hands tucked into his shorts. Defendant Fischer advised Decedent Davis that it was necessary for him to attend a medical evaluation. Decedent Davis responded verbally but did not stand up.

27.     Correctional Officers completed the intake and transfer of four other inmates before they returned to address Decedent Davis.

28.     Defendant Fisher and Nurse Spencer returned to Holding Cell 1 in an effort to continue Decedent Davis's intake process.

29.     At 5:43a.m., Decedent Davis exited Holding Cell 1, sat with Nurse Spencer, and completed the medical intake process.

30.     During the health screening, Decedent Davis was again documented to be alert and oriented to person, place, and time.

31.     At 5:45 a.m., Nurse Spencer, noted that the Decedent Davis had some superficial skin injuries on various parts of his body; and also generated a report indicating that Decedent Davis did not appear overly anxious, panicked, afraid, or angry. She further documented his appearance and indicated that he was not acting or talking in a strange manner.

32.     Among other evaluative measures, Nurse Spencer performed a Mental Health Screen for Men. Based on this diagnostic measure, conducted at or about 5:46 a.m., Nurse Spencer noted that Decedent Davis was not exhibiting bizarre or unusual behaviors suggestive of a mental health disorder. Nurse Spencer further charted the absence of behavior, history, or any

physical appearance indicative of a risk of suicide, concern for assaultive propensities, and/or a psychiatric condition.

33.     At 5:49a.m., Nurse Spencer completed a "Receiving Screening" of Decedent Davis wherein it was once again stated that he was "Alert and Oriented to Time, Place, and Person."

34.     At the conclusion of the medical screening, Decedent Davis was processed and fingerprinted.

35.     During this time, Decedent Davis was fully responsive and followed all orders from staff.

36.     Defendants Swanke and McKeiver transported Decedent Davis to Changing Rooms 3 and 4 so that he could be issued an institutional uniform and a bed roll for his housing.

37.     According to Defendant McKeiver, Decedent Davis began peeking out from the changing room and pacing back and forth, as he was being issued an institutional uniform.

38.     Defendant McKeiver has also reported that, when he prepared to escort Decedent Davis to a holding cell, the latter tried to run out of the changing room and past Defendant McKeiver.

39.     At or about 6:09 a.m., Defendant Fischer, who was stationed in the "Zone 1 Office", heard yelling that he perceived to be coming from the changing area.

40.     Defendant Fischer responded to the changing area where he observed Defendants McKeiver and Swanke tackle and forcibly take Decedent Davis to the ground.

41.     Decedent Davis was then returned to a standing position. Defendant McKeiver secured Decedent Davis by pushing him against a wall and using both hands to secure Decedent Davis's hands.

42.     According to Defendant McKeiver, Decedent Davis physically resisted and screamed loudly while he was being held in place.

43.     Decedent Davis was again taken to the ground by Defendants McKeiver and Swanke. In a report concerning the happening, Defendant McKeiver asserted that he used both of his hands to control Decedent Davis's right arm to the floor.

44.     Defendant McKeiver applied a pain compliance technique/left arm-bar by placing Decedent Davis's right wrist in between his left bicep and forearm. Defendant McKeiver then used his right hand to apply pressure on Decedent Davis's right triceps above the elbow joint.

45.     Defendant Swanke assisted by maintaining control of Decedent Davis's left arm. Defendant Swanke utilized both hands to gain control of Decedent Davis's upper extremity and then downward force and forcibly steered Decedent Davis down to the floor such that he was lying on his stomach.

46.     Defendant Swanke applied an arm bar by placing Decedent Davis's left wrist in between his right bicep and forearm. Defendant Swanke used his left hand in a pain compliance technique directed at Decedent Davis's left triceps.

47.     Defendant Fischer engaged Decedent Davis's legs.

48.     While Decedent Davis was being forcibly held to the ground, Defendant Fischer engaged Decedent Davis's and physically pushed Decedent Davis's right leg over his left leg; Defendant Fischer then applied additional forward pressure on his leg with the design and intent torquing the joint upwards at its natural bend point.

49.     Decedent Davis was not moving as he was being subjected to the above-described joint manipulations. Defendant Swanke used both hands to place Decedent Davis's left hand behind his back.

50. Defendant Fischer secured Decedent Davis in handcuffs.

51. According to Defendant Fisher, Decedent Davis requested medical attention after he had been placed in the handcuffs.

52. Defendant Fischer utilized both of his hands to forcibly pull Decedent Davis to his feet. Defendant Swanke simultaneously utilized both of his hands to help control Decedent Davis's left side while Decedent Davis was being escorted to the medical exam room for further processing.

53. Defendants Swanke and Fischer escorted Decedent Davis in front of the medical triage room. Decedent Davis, who remained handcuffed, was then seated in a chair.

54. Decedent Davis attempted to stand up from the chair and started screaming loudly that staff were trying to kill him.

55. Defendant Swanke immediately applied another pain compliance technique; a right bent escort hold wherein he placed his right arm underneath and through the left arm of Decedent Davis until his right hand was on top of Decedent Davis's left shoulder and then applied downward pressure to bend Decedent Davis at the waist level.

56. Defendant Fischer simultaneously used both hands to apply downward pressure to Decedent Davis's right arm. Defendant Swanke placed his left hand on Decedent Davis's left elbow and applied downward pressure.

57. Defendants Fischer and Swanke again acted to take Decedent Davis to the ground.

58. While Decedent Davis was being held against the ground, Defendant Fischer used both hands to apply downward pressure on Decedent Davis's right arm.

59.     Defendant Strawderman simultaneously engaged Decedent Davis by grabbing his legs. Defendant Strawderman used his right and left hand to cross Decedent Davis's left leg over his right knee, creating a fulcrum at the joint against the opposite leg and forced Decedent Davis into a figure four leg lock. Defendant Sergeant Strawderman utilized his body weight to exert additional pressure on Decedent Davis's right leg.

60.     Decedent Davis right leg was pushed down and torqued up towards his buttocks while in this position.

61.     Defendant Swanke placed his left hand on Decedent Davis's left shoulder and applied pressure to prevent Plaintiff Philmore Davis from turning his torso toward Defendant Swanke.

62.     Defendant Sergent Christopher Fischer reported that Decedent Davis was calm while he was being held in the above-described manner and requested that he be sat up into the chair.

63.     Defendants Fischer and Swanke returned Decedent Davis to the chair.

64.     When Decedent Davis was returned to the chair it was clear that he had been physically injured and there was a visible derangement in his right lower extremity.

65.     Upon recognizing the extent of the injury that had been caused to Decedent Davis's right leg, Defendant Strawderman announced a "Medical Code 2", and Nurse Spencer advised staff that she called CRNP Noel Stevens to come down to the Processing area at the Baltimore County Detention Center to assess Decedent Davis.

66.     Defendant Strawderman advised Nurse Spencer that Decedent Davis needed to be evaluated immediately and attempted to call CRNP Noel Stevens himself, but he was unable to make contact.

67.     Defendant Strawderman then called Medical Treatment Officer Collis and advised her to have CRNP Stevens report to Processing immediately. CRNP Stevens responded that it would be a few minutes before she could respond to the Processing area at the Baltimore County Detention Center.

68.     Decedent Davis was initially calm following the call for medical attention; however, at or about 6:17 a.m., he screamed that staff were trying to kill him and attempted to the stand up from the chair in which he had been seated.

69.     Notwithstanding Decedent Davis's patent leg injury, his resulting inability to walk, and the defendants' collective understanding that he needed urgent medical attention, Decedent Davis was once again tackled to the ground by Defendants Fischer and Swanke. This marked the third occasion wherein Decedent Davis was forcibly taken to the ground.

70.     Defendant Fischer utilized both of his hands to apply downward pressure upon Decedent Davis's right arm and thereby forced him into a supine position lying on the ground. Thereafter, Defendant Fischer applied downward pressure upon Decedent Davis's right arm such that Decedent Davis was immobilized on the ground surface.

71.     Defendant Swanke also engaged Decedent Davis's arms with the apparent intent of assisting Defendant Fisher in the process of forcing Decedent Davis to the ground and then immobilize Decedent Davis by holding him against the ground surface.

72.     While Decedent Davis was being forcibly detained against the ground, Defendant Strawderman once again acted applied a joint manipulation/pain compliance technique. Defendant Strawderman used his right and left hands to cross Decedent Davis's left leg over his right knee, thereby creating a fulcrum at the joint and again placed Decedent Davis in what has been characterized herein as a "figure four leg lock." Defendant Strawderman then leveraged

Decedent Davis's right lower extremity, against the opposite extremity, by utilizing his full body weight to place pressure on Decedent Davis's right leg and push Decedent Davis's foot up toward his buttocks.

73.     Defendant Strawderman leaned in and torqued Decedent Davis's legs for the third time.

74.     Before Defendants Fisher, Swanke and Strawderman acted to take Decedent Davis to the ground on this third occasion and undertook to effect a joint manipulation/pain compliance technique/figure four leg lock on Decedent Davis's right leg, they knew, or reasonably should have known, that Decedent Davis's leg was already compromised and/or injured to such an extent that it was not structurally sound and/or that Decedent Davis was at enhanced risk of injury should he be subjected to any additional joint manipulation. The visible derangement of the right lower extremity had already prompted a call for urgent medical attention.

75.     Decedent Davis, who had been injured when he was taken to the ground on the first two occasions, suffered further injury to the right lower extremity by way of the forced restraint and implementation of the pain compliance technique/joint manipulation effected on his right lower extremity.

76.     Defendants Fisher, Swanke and Strawderman's conduct was gratuitous; unnecessary and without lawful authority; cruel and unusual; undertaken with malice; and effected with deliberate disregard for the risk that Decedent Davis preexisting physical injury would be exacerbated by the application of additional force.

77.     Defendant Fischer directed Decedent Davis to remain on the ground while awaiting a medical response.

78.     CRNP Stevens, and additional responding medical personnel, subsequently arrived on the scene where Decedent Davis was lying on the ground surface.

79.     Upon arrival at Decedent Davis's location, CRNP Stevens observed him to be lying face down on the ground surface with his hands cuffed behind his back, his legs crossed behind him, and his feet held towards his buttocks.

80.     CRNP Stevens further observed Defendants Fisher, Swanke and Strawderman restraining Decedent Davis by holding his arms and restraining his legs.

81.     When CRNP Stevens arrived on the scene, Decedent Davis was yelling: "help me they are trying to kill me."

82.     Defendant Strawderman eventually released Decedent Davis's legs and the latter was positioned lying on his side by Defendants Fischer and Swanke.

83.     CRNP Stevens attempted to speak with Decedent Davis but he was incoherent and non-responsive to her questions.

84.     Decedent Davis was visibly injured after being released from the ground by Defendants Fisher, Swanke, and Strawderman. CRNP Stevens observed Decedent Davis' right knee to be severely dislocated with the lower portion of the extremity out of regular anatomic alignment and his foot pointing unnaturally inward.

85.     While CRNP Stevens was evaluating Decedent Davis, Defendant Swanke placed his right hand on Decedent Davis's right leg and applied pressure. This effort was intended, and undertaken deliberately, to subject Decedent Davis to additional pain and suffering.

86.     Because Decedent Davis was being held at the Baltimore County Detention Center on a temporary commitment,  CRNP Stevens determined that he would be transported out of the facility for medical evaluation and treatment.

87.     CRNP Stevens advised Defendant Strawderman that Decedent Davis would be transported to the hospital in a non-emergency capacity.

88.     Defendants Strawderman and Fischer disagreed with the proposed course of action and indicated that Decedent Davis should be transported to the hospital in a 911 capacity. CRNP Stevens agreed that an emergent medical response and transport was appropriate.

89.     Shortly before 6:30 a.m., 911 dispatch was contacted by Central Control Officer Stockman at the Baltimore County Detention Center.

90.     CRNP Stevens acted to stabilize Decedent Davis's right leg while awaiting EMS response to the Baltimore County Detention Center.

91.     At approximately 6:41 a.m., the Baltimore County Fire Department arrived on scene in response to the call regarding Decedent Davis.  In a report documenting the encounter, responding EMS personnel have indicated that, at the time of their arrival in Baltimore County Detention Center, Decedent Davis was lying prone with his hands handcuffed behind his back, Decedent Davis's right leg was being stabilized a CNA who advised that she felt the right knee had been dislocated.

92.     The responding EMS personnel observed that Decedent Davis's right leg appeared to be shortened and the lower portion of the extremity was rotated medially.

93.     CRNP Stevens joined EMS in splinting the leg. In the process, she documented what she characterized as a strong pedal pulse in the right foot after the splint was applied.

94.     At the request of responding EMTs, Defendant Fischer removed the handcuffs from Decedent Davis, and then reapplied them so that Decedent Davis's hands were restrained in front of his body.

95.     The Baltimore County Fire Department transported Decedent Davis from the Baltimore County Detention Center to the Greater Baltimore Medical Center. Decedent Davis arrived at GBMC at approximately at 7:37a.m.

96.     A CT was performed and revealed "generalized soft tissue swelling in the region of the knee joint, with a small effusion present" in the right knee.

97.     Upon further examination, including a CT Angiogram of the lower extremity, it was determined that Decedent Davis had suffered, among other injuries, an "abrupt occlusion of the distal [Superficial Femoral Artery] approximately 5cm above the right knee joint, involving the entire popliteal artery [with an] occluded segment extend[ing] craniocaudally for approximately 12cm."

98.     When the health care providers at GBMC understood the severity of Decedent Davis's injury, he was immediately transported to the University of Maryland R. Adams Cowley Shock Trauma Center.

99.     The vascular injury suffered by Decedent Davis was irreparable.

100.    On August 23, 2023 Decedent Davis underwent a right through the knee amputation.

101.    On August 25, 2023 a second higher revision of the August 23, 2023 right through the knee amputation was performed.

102.    As a direct result of the above-described actions by Defendants Fischer, Strawderman, McKeiver, and Swanke, Decedent Davis suffered serious and permanent physical injuries including, but not limited to, an occlusion of the superficial femoral artery. Decedent Davis underwent a number of surgical procedures to treat this acute injury including, but not limited to, a through the knee amputation of the right lower extremity and a revision.

103.     Decedent Davis was further caused to live with a lower extremity amputation until the time of his eventual death in June of 2023. The deficit rendered him unable to ambulate and without freedom of movement, unable to care for himself, and unable to perform regular activities of daily living.

104.     In addition to the physical injuries described herein, Decedent Davis suffered the following injuries and damages:

    i.     Violation of his well-established constitutional rights under the Fourteenth Amendment of the United States Constitution to be provided due process of the law;

    ii.     Violation of his constitutional rights under the Maryland Declaration of Rights clearly established and well settled state constitutional rights under the Maryland Declaration of Rights Articles 24 and 26;

    iii.     Physical pain and suffering;

    iv.     Emotional trauma and suffering, embarrassment, and mental anguish;

    v.     Lost wages and loss of future earning potential;

    vi.     And has suffered economic loss due to the sums of money spent to alleviate the injuries that were inflicted by the Defendants.

105.     Decedent Davis in no way consented to the described actions and/or use of force by Defendants Strawderman, Fischer, McKeiver, and Swanke; in no way provoked, contributed to, or in any way presented just or reasonable cause for Defendants Strawderman, Fischer, McKeiver, and Swanke to act as they did; and did nothing to contribute to the unlawful and unjustified use of force carried out by Defendants Strawderman, Fischer, McKeiver, and Swanke.

106.     The conduct of Defendants Strawderman, Fischer, McKeiver, and Swanke was without legal justification or a proper purpose; undertaken with malice and reckless disregard for a serios known risk of injury to Decedent Davis; carried out with malice and an intent to cause extreme pain and suffering and/or inflict injury; and undertaken with a knowing disregard to Decedent Davis's rights established under the United State Constitution and/or the Maryland Declaration of Rights.

107.     Defendants Sergeant Eric Strawderman, Sergeant Christopher Fischer, Officer Devin McKeiver, and Officer Matthew Swanke's actions were also contrary to Baltimore County policies, procedures and protocols.

108.     Defendants Sergeant Eric Strawderman, Sergeant Christopher Fischer, Officer Devin McKeiver, and Officer Matthew Swanke did not attempt efforts to manage Decedent Davis through non-physical interventions.

109.     Rather than attempting any effort toward a non-violent resolution and/or de-escalate the encounter, Defendants Sergeant Eric Strawderman, Sergeant Christopher Fischer, Officer Devin McKeiver, and Officer Matthew Swanke exerted unreasonable and excessive force against Decedent Davis on three separate occasions.

110.     Upon information and belief, Defendants Sergeant Eric Strawderman, Sergeant Christopher Fischer, Officer Devin McKeiver, and Officer Matthew Swanke never received any training on the handling of emotionally disturbed persons, those experiencing mental health crises, and/or those experiencing cognitive decline and/or the manner of response to pre-trial detainees experiencing the same.

111.     Defendants Sergeant Eric Strawderman, Sergeant Christopher Fischer, Officer Devin McKeiver, and Officer Matthew Swanke actions as alleged in this case and the instant

pleading, were performed pursuant to the de facto custom and policy within the Baltimore County, Maryland of unreasonably directing excessive force against emotionally disturbed persons.

## COUNT I – BATTERY

**(Plaintiff Philmore Davis v. Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke)**

112.     Plaintiff hereby incorporates Paragraphs 1 through 111 as if fully restated herein.

113.     Defendants Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke engaged in intentional acts of unlawful conduct with Decedent Davis such that he sustained serious and permanent injuries.

114.     Defendants Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke utilized unreasonable, unlawful, and excessive force by, among other things, pushing Decedent Davis against a wall; taking Decedent Davis to the ground on multiple occasions; by effecting pain compliance techniques and joint manipulations on Decedent Davis including, but not limited to, the occasions wherein Defendants crossed Decedent Davis's right leg over his left leg and using the opposite extremity as a fulcrum while pressing down with body weight and exerting force on the lower portion of the limb; by placing Plaintiff Decedent Davis in a figure four leg lock with the left leg behind the back of the right leg and torquing it upwards; and crossing Decedent Davis's left leg over his right knee and torquing it upwards.

19

115.     Defendants Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke employed the pain compliance techniques and joint manipulations described herein when, and despite their knowledge, that Decedent Davis's lower extremity had already been injured at the Baltimore County Detention Center.

116.     Decedent Davis in no way provoked, contributed to, or in any way presented just or reasonable cause for Defendants Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke to act as they did; and did nothing to contribute to the unlawful touching that Defendants Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke inflicted upon him.

117.     The conduct of Defendants Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke was without legal justification and was improperly motivated by ill will and actual malice – including, but not limited to, a desire to inflict pain, suffering, and injury upon the Plaintiff Philmore Davis.

118.     As a direct and proximate result of the actions of Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke, Decedent Davis sustained significant injuries, medical bills, and psychological damages.  Decedent Davis suffered additional injuries that are not enumerated herein.

## COUNT II – GROSS NEGLIGENCE

**(Plaintiff Philmore Davis v. Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke)**

119.     Plaintiff hereby incorporates Paragraphs 1 through 111 as if fully set forth herein.

120.     Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke's use of force described herein amounted to gross negligence as Defendants initiated force, as described herein, in a wanton and reckless manner, without any regard to the health and well-being of Decedent Davis and with knowledge the physical structure of Decedent Davis's right lower extremity had been compromised and that he was at risk for additional physical injury.

121.     Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke acted with the knowledge that they were physically injuring Decedent Davis and subjecting to extreme pain and suffering.

122.     Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke had no valid reason for the application or force after Decedent Davis had been patently injured during, and as a direct proximate result of, the initial take downs.

123.     Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke otherwise acted in a wanton and reckless manner by performing the joint manipulations/pain compliance techniques/figure four leg locks described herein.

124.     Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke acted in a wanton

and reckless manner, were careless, and grossly negligent as they initiated and maintained the use of force; utilized force in an indiscriminate manner; utilized force in a manner which posed an unreasonable risk of harm to Decedent Davis; acted in an unreasonable and imprudent manner which created an actual danger to Decedent Davis; excessive use of force; failed to adhere to Baltimore County Department of Corrections policies, procedures, rules, and/or regulations; utilized force in a reckless and careless manner and in violation of the Baltimore County Department of Corrections General Orders; and in other respects not known to the Plaintiff, but which may become known prior to the time of trial.

125.     But for the Defendants' grossly negligent conduct, Decedent Davis's permanent injuries and damages would never have occurred.

126.     At all times relevant herein, Decedent Davis was free of any negligence and/or contributory negligence.

127.     As a direct and proximate result of the aforesaid gross negligence and gross carelessness, Decedent Davis suffered serious injuries including those described herein; was caused to endure extreme physical and emotional pain and suffering, and to was permanently debilitated and disabled until the time of his death.

128.     As a direct proximate result of the Defendants' gross negligence, Decedent Davis was further caused to incur medical bills and suffer economic losses due to the sums of money spent to alleviate the injuries described herein and obtain critical and necessary care until the time of his death.

### COUNT III — DEPRIVATION OF RIGHTS UNDER 42 U.S.C.A. § 1983 – FOURTEENTH AMENDMENT

**(Plaintiff Philmore Davis v. Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke)**

129.     Plaintiff hereby incorporates Paragraphs 1 through 128 as if fully restated herein.

130.     During the time relevant to the matter at issue, Decedent Davis was a pre-trial detainee.

131.     At all times relevant to this Complaint, Decedent Davis had rights afforded to him by the Fourteenth Amendments to the United States Constitution and full due process of the law.

132.     As a pre-trial detainee, Decedent Davis was entitled to full due process.

133.     At all times relevant herein, Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke were acting under the color of State and local law and as correctional officers at the Baltimore County Detention Center. Their conduct therefore triggers 42 U.S.C. §1983.

134.     Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke's actions and omissions deprived Decedent Davis of his clearly established and well-settled constitutional rights.

135.     Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke knowingly acted to deprive Decedent Davis of his constitutional rights.

136.     The actions of Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke deprived Decedent Davis of rights and privileges secured and protected by the United States Constitution, specifically the Fourteenth Amendment right to due process of the law.

137.     Considering the totality of the circumstances, Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and

Defendant Officer Matthew Swanke's conduct, in among other things physically engaging Decedent Davis on three separate occasions, twice during which Plaintiff Philmore Davis was handcuffed and at least once after he was already visibly injured.

138.     Moreover, Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke knew and understood thar Decedent Davis was an emotionally disturbed person, but made no effort to communicate with him, build rapport and/or deescalate the situation before commencing the use of force. Reasonable correctional officers in the same situation would not have concluded that Decedent Davis, who was unarmed and handcuffed posed an immediate threat justifying the use of force or that force was necessary considering the ongoing circumstances.

139.     Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke knowingly acted to deprive Decedent Davis of his Constitutional Rights maliciously and with reckless disregard. Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke further conspired with each other to act in an unlawful manner that would violate Plaintiff Philmore Davis's Constitutional Rights.

140.     Plaintiff, on behalf of Decedent Davis, claims damages for the injuries set forth above under 42 U.S.C. § 1983 against Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke for violation of Decedent Davis's constitutional rights under color of law.

COUNT IV — DEPRIVATION OF RIGHTS
UNDER ARTICLES 24 AND 26 OF THE

**(Plaintiff Philmore Davis v. Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke)**

141.     Plaintiff incorporates Paragraphs 1 through 140 as if fully restated herein.

142.     As a direct and proximate result of the actions and omissions of Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke, described herein, all of which were committed under the color of their authority as correctional officers of the Baltimore County Detention Center and while acting in the capacity of duly authorized correctional officer, Decedent Davis was further deprived of certain "State Rights" established by way of Article 24 and 26 of the Maryland Declaration of Rights (in particular his right to the security of his person and his due process rights).

143.     As a result of the above-described acts attributed to Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke, Decedent Davis was deprived of rights and immunities secured to him, was deprived of his liberty; was caused to suffer physical injuries; and has suffered and will continue to suffer economic loss due to the sums of money spent to alleviate the injuries that were inflicted by Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke.

144.     As a direct consequence in result of the actions and omissions of Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke's described herein, Decedent Davis was

caused to suffer severe physical injuries and emotional and physical suffering.

**WHEREFORE**, Plaintiff Verna Gregg as Personal Representative of the Estate of Philmore Roy Davis hereby requests that this Honorable Court:

(A)     Award the Plaintiff actual, compensatory, and consequential damages in an amount to be determined at trial against Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke, jointly and severally;

(B) Award Plaintiff punitive damages in an amount to be determined at trial against Defendant Sergeant Eric Strawderman, Defendant Sergeant Christopher Fischer, Defendant Officer Devin McKeiver, and Defendant Officer Matthew Swanke;

(C) Award costs of this action to the Plaintiff;

(D) Award the Plaintiff reasonable attorney's fees and costs incurred in pursuing this action, as provided under 42 U.S.C. §§ 1983 and 1988; and

E) Award such other and further relief as this Court may deem just and appropriate.

Respectfully submitted,

IAMELE & IAMELE, LLP


_____
/s/
Domenic R. Iamele, Federal Bar No. 00878
201 North Charles Street, Suite 400
Baltimore, Maryland 21201
410-779-6160 (Telephone)
410-779-6161 (Facsimile)
diamele@iamelelaw.com


_____
/s/
Anton L. Iamele, Federal Bar No. 14845
201 North Charles Street, Suite 400

Baltimore, Maryland 21201
410-779-6160 (Telephone)
410-779-6161 (Facsimile)
aiamele@iamelelaw.com

**PRAYER FOR JURY TRIAL**

Plaintiff hereby requests that all issues raised in this First Amended Complaint be decided by way of a jury trial.

_____/s/_____
Anton L. Iamele

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the **5th** day of **July, 2024**, a copy of the foregoing Third Amended Complaint was served electronically via ECF and sent by first class postage pre-paid mail to the following:

Bradley J. Neitzel
Assistant County Attorney
Baltimore County Office of Law
400 Washington Avenue, Suite 219
Towson, MD 21204

_____/s/_____
Anton L. Iamele