IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Maryland)

**VERNA GREGG** *

Plaintiff *

v. *

**ERIC STRAWDERMAN** *

Defendant * Civil Action No.: 1:23-cv-02270

* * * * * * * * * * * * *

**PLAINTIFF'S MOTION TO HAVE JURY VIEW SCENE**

Plaintiff Verna Gregg, as Personal Representative of the Estate of Philmore Davis, respectfully requests that the Jury be permitted to view the "Intake Processing" area at the Baltimore County Detention Center ("BCDC"), inspect the CCTV system covering the Intake Processing Area, and view the Command Center where the CCTV system is monitored and recordings are collected and maintained. Plaintiff further requests that a representative of BCDC demonstrate the "Zoom," "Pan," and "Event Focus" features of the CCTV system, and states as follows:

1. The instant case involves allegations that defendant, Eric Strawderman, committed Correctional Officer misconduct and used excessive force when he applied two figure-four leg locks to plaintiff 's lower right extremity in the Inmate Processing area of the Baltimore County Detention Center. These joint manipulations caused a disruption and occlusion of the popliteal arterial system in Mr. Davis's right lower extremity, ultimately requiring an amputation and subsequent revision amputation of his right lower leg on August 23, 2020, after Mr. Davis was rushed to the University of Maryland Shock Trauma Center.

2. Plaintiff alleges that defendant has violated Plaintiff's civil rights under the 4th and 14th amendments of the United States Constitution, U.S.C.A. section 1983, and that Defendant is also liable for Gross Negligence and Battery.
3. Plaintiff's Decedent was transported from the Baltimore County Detention Center to GBMC, and eventually to the University of Maryland Shock Trauma Unit. BCDC policies and procedures defined this event as a "Serious Incident", requiring, among other things, that CCTV tapes of the incident be archived and then distributed to the Director and his/her staff for preservation of the footage/recordings.
4. At the time of the occurrence, there was a high-resolution sophisticated CCTV, covering the entirety of the inmate processing area. The security system had the capability of "panning," "zooming" and "event recording" which could be activated from the command center.
5. Although BCDC's policies and procedures mandate collecting and archiving CCTV footage of a "Serious Incident," no videotapes were collected and/or if collected, these videotapes were either lost or destroyed while in the possession of employees, agents and/or servants of the BCDC.
6. There are no adequate alternatives to the requested jury viewing. The surveillance footage that would ordinarily permit the jury to view the incident and assess the evidence concerning the alleged misconduct, as well as the physical configuration of the Intake Processing Area and the location and capabilities of the CCTV system, is unavailable. In the absence of video evidence, the jury should be permitted to view the physical configuration of the Intake Processing Area and the location, positioning, and capabilities of the surveillance cameras to properly assess the evidence. Photographs and diagrams would ordinarily provide an alternative means of showing these circumstances. However, Counsel for Defendant has

refused to provide photographs of the Intake Processing Area, has refused to permit Plaintiff to photograph the area, and has refused to provide diagrammatic layouts or other visual representations sufficient for the jury to understand the configuration of the area and the location and capabilities of the CCTV system. Under these circumstances, a limited viewing of the Intake Processing Area is necessary to provide the jury with an accurate understanding of the physical circumstances directly related to the material issues in this case.

7. Furthermore, a viewing of the Intake Processing Area and a brief demonstration of the CCTV system can be conducted with minimal disruption to BCDC's operations. The Jury may be transported to and from BCDC by the United States Marshals Service for the United States District Court, and the viewing can be limited to the areas and equipment relevant to the issues at trial.

8. Counsel for both parties will be present during the viewing. With the Court's permission, Plaintiff further requests that counsel be permitted to direct limited questions to an appropriate BCDC representative, such as Major Andrew Chiddick, concerning the physical layout of the Intake Processing Area, the CCTV system and its capabilities at the time of the incident, and the BCDC procedural protocols for collecting/archiving footage of "Serious Incidents."

9. The requested viewing is directly relevant to issues in this case, including the circumstances surrounding the incident, the location and positioning of the parties, the visibility and capabilities of the CCTV system, and the availability and preservation of video evidence. Furthermore, the Intake Processing Area has not substantially changed since the date of the incident, Sunday, August 23, 2020.

**Legal Standard and Authority:**

"The federal courts recognize their inherent power to permit a jury view of places or objects outside the courtroom. The decision to permit a view is entrusted to the sound discretion of the trial court." *United States v. Simmons*, 380 Fed. Appx. 323, 327-328 (4th Cir. 2010), quoting *United States v. Passos-Paternina,* 918 F.2d 979, 986 (1st Cir. 1990); *Gunther v. E. I. Du Pont de Nemours & Co.*, 255 F.2d 710 (4th Cir. 1958) ("The propriety of sending the jurors to view the property was a question that lay within the sound discretion of the district judge"); *See also United States v. Woolfolk,* 197 F.3d 900, 905 (7th Cir. 1999) (recognizing that a district court's ruling on a motion for a jury view is reviewed for abuse of discretion).

Maryland law similarly recognizes a trial judge's discretion to order a jury viewing, with Maryland Rule 2-515 providing, in pertinent part:

> "The court, on motion of any party or on its own initiative, may order that the trier of fact view any property that is involved in the litigation or any place where a material fact in issue occurred. The judge shall be present at and shall supervise the view and shall be the only person permitted to make any statement to the jury during the view." Md. Rule 2-515(a).

The Rule further provides that "[t]he parties, their attorneys, and other representatives may be present during a view," and that the jury shall attend the view as a body under the charge of an officer of the court. Md. Rule 2-515(b). Although Md. Rule 2-515 does not govern federal proceedings, the Rule is consistent with federal authority recognizing the trial court's discretion to permit a limited and supervised jury view of a location where material facts occurred, so long as proper safeguards are in place.

Federal Courts have identified several circumstances that may weigh against permitting a jury view, none of which are present here. First, a view may be refused where the location has

changed significantly since the events at issue. See *United States v. Moonda*, 347 F. App'x 192, 201 (6th Cir. 2009); *United States v. Davis*, 127 F.3d 68, 70, 326 U.S. App. D.C. 400 (D.C. Cir. 1997); *United States v. Culpepper*, 834 F.2d 879, 883 (10th Cir. 1987). Here, the Intake Processing Area has not substantially changed since the August 23, 2020, incident. Therefore a jury view would provide an accurate representation of the physical circumstances existing at the time of the incident.

Second, a view may be unnecessary where the evidence presented at trial is sufficient to give the jury an adequate picture of the scene. See *Moonda*, 347 F. App'x at 201; *United States v. Chiquito*, 175 F. App'x 215, 217 (10th Cir. 2006); *Kelley v. Wegman's Food Mkts., Inc.*, 98 F. App'x 102, 105 (3d Cir. 2004). As stated, that concern is not present here because the surveillance footage that would ordinarily permit the jury to visualize the incident is unavailable, and Defendant has refused to provide any visual materials of the Intake Processing Area.

Finally, courts may consider whether a proposed view presents logistical difficulties, including undue delay, difficulty of travel, or difficulty of maintaining control over the jury. See *Gunther v. E.I. Du Pont de Nemours & Co.*, 255 F.2d 710, 716 (4th Cir. 1958); *Jones v. Consolidated Coal Co.*, No. 1:13CV11, 2014 U.S. Dist. LEXIS 35929, at *4 (N.D. W. Va. Mar. 19, 2014). Again, none of these difficulties are present here. The location of BCDC is close to the courthouse, the requested viewing can be brief, limited to the Intake Processing Area and relevant CCTV equipment, conducted under the Court's supervision with counsel for both parties present, and undertaken with transportation provided by the United States Marshals Service. Accordingly, none of the considerations weighing against a jury view are present.

**WHEREFORE**, Plaintiff Verna Gregg, as Personal Representative of the Estate of Philmore Davis, respectfully requests that this Court permit the Jury to view the Intake Processing Area at

the Baltimore County Detention Center and observe a brief demonstration of the CCTV system's "Zoom," "Pan," and "Event Focus" capabilities.

Respectfully submitted,

IAMELE & IAMELE, LLP

_____________-s-____________
Domenic R. Iamele, Federal Bar No. 00878
201 North Charles Street, Suite 1802
Baltimore, Maryland 21201
410-779-6160 (Telephone)
410-779-6161 (Facsimile)
diamele@iamelelaw.com

_____________-s-____________
Anton L. Iamele, Federal Bar No. 14845
201 North Charles Street, Suite 700
Baltimore, Maryland 21201
aiamele@iamelelaw.com
Telephone: 410-779-6160
Facsimile: 410-779-6161
*Counsel for Plaintiff Verna Gregg*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that on this August 31, 2026, a copy of the foregoing was transmitted by way of this Court's electronic filing system and sent by first-class, postage prepaid mail, to the following:

Joseph Allen, Esquire
Baltimore County Office of Law
400 Washington Avenue, Unit 201
Towson, MD 21204

__________-s-___________
Domenic R. Iamele